O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RALPH MOORE | § | |
|     TDCJ-ID #1042302, | § | |
|         Plaintif, | § | |
| V. | § | C.A. NO. C-04-302 |
| | § | |
| EILEEN KENNEDY, et al. | § | |
|         Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (D.E. 28). Plaintiff has not filed a response in opposition.[1] Having considered the record, motions, affidavits and documentary evidence in support thereof, it is respectfully recommended that defendants' motion for summary judgment be granted.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

**II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the Stiles Unit in Beaumont, Texas. On the dates of the incidents at issue, plaintiff was incarcerated at the McConnell Unit in Beeville, Texas. POC[2] at 1. Following an August 5, 2004 evidentiary hearing, the magistrate judge dismissed certain claims and defendants and retained plaintiff's failure to protect claims against wardens Eileen Kennedy and

---

[1] Pursuant to the Order for Service of Process (D.E. 18), plaintiff had 30 days to file a response to any dispositive motion, in this case, by May 19, 2005..

[2] "POC" refers to plaintiff's original complaint (D.E. 1).

Alfonso Castillo. Plaintiff claims that his former cell-mate, Bobby Bright, and other unknown offenders, threatened to kill him, attempted to poison him, and assaulted him, because he allegedly reported to officials about inmate drug use. He claims he requested protective custody, but that defendants denied him such classification, in deliberate indifference to his health and safety. Both defendants have raised the defense of qualified immunity (D.E. 19).

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following evidence:

Exh. A:    Authenticated copy of plaintiff's classification records;

Exh. B:    Affidavit of Eileen Kennedy; and

Exh. C:    Affidavit of Alfonso Castillo.

The following facts are not in dispute:

In March 2004, the Unit Classification Committee ("UCC") moved plaintiff from K-pod, 59-B cell to L-pod, 39 cell. POC at 3. Plaintiff's cellmate in K-pod had been Bobby Bright. POC at 3a. After plaintiff was moved, Offender Bright told other inmates that plaintiff wrote an I-60 to Warden Kennedy suggesting that inmates in K-pod, 3 section, be screened for drugs due to availability and use. Id.

On April 6, 2004, Warden Castillo chaired a Unit Classification Committee ("UCC") and considered a life in danger ("LID") complaint purportedly filed by plaintiff. Exh. A at 3; Castillo Aff't at ¶ 4. At the UCC hearing, plaintiff stated he had not filed a LID complaint and that he did not know who did. Castillo Aff't at ¶ 4. Plaintiff signed a waiver stating that his life was not in danger and that he did not need intervention on his behalf. Castillo Aff't at ¶ 4; Exh. A at 3.

On April 27, 2004, gang members approached plaintiff and told him that he had twenty-four hours to "get off the unit." POC at 3a   On that same date, plaintiff found a crushed pill in his food. Id. On April 30, 2004, plaintiff again found a crushed pill in his food. Id.  Plaintiff told Lt. Garcia that he was in trouble and needed to file an LID. Id.  Lt. Garcia assisted plaintiff with filing the LID and placed plaintiff in safekeeping on 11 Building for the remainder of that day. Id.

On May 5, 2004, Warden Castillo chaired a second UCC meeting to consider the LID complaint filed by plaintiff against offender Bobby Bright. Exh. A at 3; Castillo Aff't at ¶ 5.  The UCC found no evidence to support plaintiff's claims and ordered that plaintiff be housed in general population. Id.  The correctional officers escorted plaintiff to 48 cell, that housed Offender Bright. POC at 3a.  When plaintiff arrived at the cell, the picket officer told plaintiff that he would be charged with a disciplinary violation if he refused his housing assignment.  POC at 3a.

Once in the cell, Bright reached into his shoe, pulled out a "shank" and said: "We're going to settle this right now." POC at 3a.  Plaintiff and Bright started fighting. Id. Sgt. Pulochio and two other officers responded, threatened to spray plaintiff with pepper spray and ordered plaintiff out of the cell. Id.  Lt. Raymond Almendarez then authorized a cell reassignment, and plaintiff was moved from 48 cell to 62B cell.  Castillo Aff't at ¶ 7.  Cell assignments are made by Count Room Staff, not wardens or assistant wardens.  Id. at ¶ 6.

While being housed in cell 62, an inmate slid two food trays under plaintiff's door.  D.E. 15. Plaintiff ate the food and became sick.  Id.  The next day, food trays were again placed under plaintiff's door. Id.  Within thirty minutes to an hour after eating the food, plaintiff began vomiting blood and had blood in his urine. Id.  Plaintiff was taken to the infirmary and then to the hospital. Id. According to plaintiff, he was rendered unconscious and has very little recollection of the event. Id.

3

On May 10, 2004, plaintiff appeared before a UCC chaired by Warden Kennedy. Exh. A at 2; Kennedy Aff't at ¶ 5. Warden Kennedy and other UCC members reviewed plaintiff's allegations that offender Bright was threatening him, but denied a unit transfer based on lack of evidence. Kennedy Aff't at ¶ 5. Warden Kennedy determined that plaintiff could remain housed in 8 building, but she told plaintiff that she would instruct Count Room Staff to not house plaintiff in the same cell as Bright. Id. Warden Kennedy noted on plaintiff's classification record "NFSHA" (Not For Same Housing Assignment) with Bright. Id. at ¶ 8. Plaintiff's records indicate that he was not housed in the same cell as Bright after May 5, 2004. Id.; Castillo Aff't at ¶ 7.

On May 28, 2004, plaintiff and Bright were involved in a fight in the recreation yard. Castillo Aff't at ¶ 8. Plaintiff was charged with instigating the fight, and was placed in pre-hearing detention, 11 solitary 13 cell. Id. Offender Bright was housed in transit, 11 solitary 18 cell. Id.

On June 8, 2004, Warden Castillo recommended to the UCC administrators in Huntsville that plaintiff be transferred off the McConnell Unit due to the "enemy situation" between plaintiff and Bright. Castillo Aff't at ¶ 9. The recommendation was approved, and plaintiff was transferred to the Stiles Unit. Id.

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on

4

file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

## V. DISCUSSION

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law

5

will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

### A. Claims against defendants in their official capacities.

In his original complaint, filed June 3, 2004, plaintiff sought an immediate transfer off the McConnell Unit. POC at 3b. This has been done. Defendants believe plaintiff is seeking monetary damages, in an unspecified amount, against defendants in their individual and official capacities. See D.E. 28 at 1.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S. Ct. 684, 688-89 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. It is recommended that defendants' motion for summary judgment to dismiss plaintiff's claims against them for money damages in their official capacities be granted and those claims dismissed with prejudice.

### B. Qualified Immunity

Defendants' move for summary judgment on the grounds of qualified immunity. The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a

constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624. Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001). Plaintiff claims that defendants Kennedy and Castillo were deliberately indifferent to his health and safety because they denied his first two LID claims and declined to transfer him off the Unit prior to his fight with Offender Bright in the recreation yard.

The deliberate indifference standard applies to cases involving protection from inmate violence. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). See also Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002 ("[p]rison officials have a duty to protect prisoners from violence at the hand of other prisoners"). "Deliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A prison official may be held liable under the Eighth Amendment for failure to protect only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. There is no Eighth Amendment liability for a prison official's failure to protect an inmate if the official responded reasonably to the risk to inmate health or safety, even if the harm ultimately was not averted. Johnson, 385 F.3d at 513.

The summary judgment evidence establishes that plaintiff was at an increased risk of harm on the McConnell Unit whether it be from unidentified gang members due to plaintiff's alleged reporting of drug use on the Unit, or from Offender Bright; however, the uncontroverted evidence also establishes that defendants responded reasonably to the known risks.

Plaintiff filed his first LID complaint on April 30, 2004, after he found a crushed pill in his food again. POC at 3. In response to this complaint, unit administrators opened an Offender Protection Investigation to determine if there was a credible threat to plaintiff's health and safety. See Exh. A at 37-38. The investigation included plaintiff's statement to the investigating officer that he believed "someone had put a hit on him" based on his reporting to the warden about drug use. Id. at 38. The investigation also includes two witness statements from Sgt. Rocha and Officer Vasquez. Exh. A at 43-44. Sgt. Rocha stated that plaintiff reported finding a crushed pill in his food, but never told him that he believed his life was in danger. Id. at 44. Officer Vasquez reported that plaintiff had told him his life was in danger. Id. at 43. It was also noted that just 29 days prior plaintiff had signed a waiver declining protection. Id. Plaintiff had specifically stated on April 1, 2004: " I didn't request this. My life is not in danger." Exh. A at 30.

The investigation also included contacting the McConnell Unit Security Threat Group Office ("STGO") because plaintiff had claimed that he was being threatened by "gang members.' Exh. A at 45. STGO responded that neither plaintiff nor Bobby Bright were being monitored for threatening activity, and there was no additional information in regards to plaintiff's life being in danger.

On March 5, 2004, Warden Castillo called plaintiff for a hearing to review the investigation and plaintiff's request for a transfer. Exh. A at 3, 37. Again, the UCC noted "insufficient evidence to support" plaintiff's LID complaint, and denied his transfer request. Id. Plaintiff was returned to a shared cell with Offender Bright; however, the uncontroverted evidence establishes that individual

cell assignments are not made by the wardens or assistant wardens. Castillo Aff't at ¶ 6. It is the duty of the Count Room Staff to review offender hall cards and to make appropriate cell assignments. Id. Thus, the UCC's denial of plaintiff's request for a transfer was not the cause of the subsequent confrontation between plaintiff and Bright. There is no evidence to suggest that Warden Castillo was reckless in his review of plaintiff's classification or request for protection.

Immediately following the March 5, 2004, confrontation in the cell, plaintiff and Bright were separated, and never again assigned to the same cell. Castillo Aff't at ¶7. Plaintiff then filed a second LID complaint, fearing that Offender Bright would kill him. Exh. A at 46-52. A second Offender Protection Investigation was initiated and investigators attempted to talk to plaintiff; however, plaintiff refused to make a statement to the investigators. Exh. A at 48-51. In a March 6, report, the investigator noted: "Offender refused to cooperate with the investigation stating 'I don't want to talk to anybody but my lawyer.'" Exh. A at 51.

On March 10, 2004, Warden Kennedy and two other UCC panel members reviewed plaintiff's second LID complaint. Exh. A at 2; Kennedy Aff't at ¶ 4. Plaintiff's request for a transfer was denied, but it was ordered that he not be assigned to the same cell as Offender Bright. Despite the March 5, 2004 cell fight, plaintiff refused to cooperate in the life endangerment investigation. As such, the decision to not transfer plaintiff off the unit, but to ensure that he not be celled with Bright, appears thoughtful and reasonable.

Plaintiff claims that he was poisoned by an unidentified inmate who slid food trays under his door on May 15, 2004. POC at 3a. He claims that he became violently ill with stomach pains, passed blood, urinated on himself, and fell unconscious. Exh. A at 105. Plaintiff alleged that the security staff allowed inmates to serve food trays on his pod, thus making it possible for an offender to slip poison in his food

9

On June 7, 2004, an investigation was initiated by the TDCJ Ombudsman Office concerning plaintiff's poisoning allegations. Exh. A at 105-07. The Ombudsman investigator contacted the McConnell Unit infirmary which confirmed that plaintiff was seen on May 16, 2004, for "acute abdominal pain and was referred to Christus Spohn Bee County Hospital for further evaluation." Exh. A at 106. However, there was no medical evidence confirming plaintiff's allegation of poisoning. The Ombudsman advised the investigator "that offender medical notes reflected that Offender Moore was diagnosed with gastroenthripis, which was a stomach virus that can be contacted in several ways but that it was not a toxic result due to ingestion of any poison as alleged by Offender Moore." Id. In addition, the Ombudsman conducted an inquiry into the feeding procedures on plaintiff's pod and found that "offenders are not allowed to assist Security Staff in the feeding of offenders housed in transient housing. The only time offenders are allowed in the transient housing is when they are cleaning and when they push food carts out of the housing areas for the purpose of returning items back to the Food Service Department." Id. Plaintiff's claim was thoroughly investigated and rejected. Plaintiff fails to offer any evidence to suggest that either defendant knew or should have known of a risk to plaintiff via poisoned food, and in fact, the investigation ruled there was no such risk. Plaintiff's conclusory allegations without evidence cannot support his claim for relief.

After the recreation yard fight, plaintiff filed a third LID complaint on June 1, 2004. Exh. A at 53-75, 188. In that complaint, plaintiff alleged that he was in a "life or death" situation and explained that he "had to harm him [Bright] or be killed. Exh. A at 53. However, plaintiff's classification records note that, following the recreation yard fight, plaintiff received only an abrasion to his right hand, while Offender Bright suffered multiple bruising around his face and ears, contusions to his forehead and to the eye area, abrasions to his left and right elbows, and an abrasion to his left shoulder. Exh. A at 62-64.

In response to plaintiff's LID complaint, a third Offender Protection Investigation was opened. Exh. A at 53-75. STGO was contacted again for more information regarding his claim that he was being targeted by Offender Bright and other prison gang members. Id. The STGO reported that Offender Bright was being monitored for possible gang association. Exh. A at 70. Offender James Edwards, who plaintiff alleged had started the recreation yard fight, was a confirmed CRIP member, though he claimed disassociation. Exh. A at 70. The STGO noted that it had "not received any other information that may indicate a threat exists against Offender Moore." Id.

At a June 8, 2004, UCC meeting, defendant Castillo and the other panel members reviewed the investigation and recommended that plaintiff be transferred off the McConnell Unit. Exh. A at 60. In its recommendation, the UCC noted:

> The McConnell Unit Classification Committee is recommending Offender Moore [plaintiff] transfer to another unit of assignment due to enemy situation. Although Offender Bright was the victim of assault, Offender Bright signed the waiver statement of the protection investigation stating his life was not in danger as long as Offender Moore did not return to general population. The McConnell Unit Classification Committee strongly believes a transfer is best to prevent any future physical confrontation between these two offenders. It is also recommended that a notation of NFSUA be added to their records.

Exh. A at 60.

The summary judgment evidence establishes that defendants carefully reviewed and considered plaintiff's repeated LID complaints and requests for a transfer. In all three instances, warden Castillo or Kennedy evaluated the relevant Offender Protection Investigation and determined that there was insufficient evidence to support his claim that Offender Bright posed a threat to his health and safety. Thus, plaintiff fails to establish that either defendant had knowledge that plaintiff faced a substantial risk of harm to his health and safety, and as such, he fails to state a failure to protect claim. Farmer v. Brennan, 511 U.S. 625, 832-51 (1994).

11

Moreover, even if plaintiff could establish that defendants' had knowledge of a risk, he fails to show that either defendant responded unreasonably to that risk. Farmer, 511 U.S. at 832-51. The classification records establish that plaintiff's requests to transfer were denied based on insufficient evidence, and in one instance, plaintiff refused to cooperate in the investigation. See Exh. A. When it became clear in June 2004 that there was an "enemy situation" between plaintiff and Offender Bright, Warden Castillo recommended that plaintiff be transferred. Plaintiff fails to establish deliberate indifference, and accordingly, defendants are entitled to summary judgment in their favor.

## VI. RECOMMENDATIONS

Plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and it is respectfully recommended that such claims be DISMISSED. Plaintiff has failed to establish that defendants Kennedy and Castillo were deliberately indifferent to his health and safety, and defendants Kennedy and Castillo have also established that they are entitled to qualified immunity. Accordingly, it is further recommended that defendants' motion for summary judgment be granted, and that plaintiff's claims for monetary damages against defendants Kennedy and Castillo in their individual capacities be dismissed with prejudice.

ORDERED this 31st day of May, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).